Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel XII

| | | |
|---|---|---|
| PAULINA ESTEFANÍA NICKLES<br>Recurrente<br><br>v.<br><br>WINDMAR P.V. ENERGY, INC. DBA WINDMAR HOME; SUNNOVA ENERGY CORPORATION C/O RVM PROFESSIONAL SERVICES, LLC<br>Recurridos | TA2025RA00151 | *Revisión Judicial* procedente del Departamento de Asuntos del Consumidor, Oficina Regional de Ponce<br><br>Caso Núm. PON-2025-00057768<br><br>Caso C.F.S.E. Núm. 06-34-03827<br><br>Sobre:<br>Ley Núm. 5 de 23 de abril de 2073 (Ley Orgánica de DACo) |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto y el Juez Campos Pérez

Adames Soto, Juez Ponente

**<u>SENTENCIA</u>**

En San Juan, Puerto Rico, a 7 de octubre de 2025.

a.

Comparece la señora Paulina Estefanía Nickles (parte recurrente o recurrente), mediante recurso de revisión judicial, solicitando que intervengamos con una *Resolución* emitida por el Departamento de Asuntos del Consumidor (DACo), el 20 de junio de 2025. Entre los remedios que nos solicita la recurrente está el que devolvamos el asunto al DACo, para que este emita una resolución final acorde con los requisitos que manda la LPAU, *infra*, pues no dispuso de todas las controversias ante su atención, al preterir a una de las partes querelladas, Windmar P.V. Energy Inc, (Windmar).

Tiene razón la recurrente, y por tenerla, procede desestimar el recurso presentado, al ser prematuro, hasta tanto el DACo emita una *Resolución* final revisable.

b.

Refiriéndonos solo a los datos procesales pertinentes, el 14 de enero de 2025, la recurrente presentó una *Querella* ante el DACo contra dos corporaciones, los co-querellados Windmar y Sunnova Energy Corporation, (Sunnova). En síntesis, alegó haber sufrido un incendio en su residencia, por el cual sufrió cuantiosos daños a su propiedad, que un perito atribuyó a un corto circuito en el garaje de la residencia, proveniente de la interconexión del sistema solar y la toma de corriente principal. Por tanto, solicitó que tales corporaciones la indemnizaran.

En respuesta, Sunnova, sin someterse a la jurisdicción del DACo, presentó ante dicha agencia una *Moción de referido a arbitraje y/o desestimación por falta de jurisdicción sobre la materia*. Según lo anticipa el título de su petición, esgrimió la existencia de una cláusula en el contrato suscrito por las partes, cuya copia incluyó, que las obligaba a someterse de manera exclusiva al proceso de arbitraje para atender las reclamaciones que surgieran entre estas.

De igual forma Windmar, sin someterse a la jurisdicción del DACo, también presentó una moción de desestimación ante dicha agencia, en iguales términos a los descritos en el párrafo que precede.

A raíz de lo cual, la recurrente presentó *Moción en oposición a solicitudes de desestimación por cláusulas de arbitrajes*. Ofreció como fundamento para que se denegaran ambas mociones dispositivas la *Interpretación del DACo 2022-003*, en la que se determinó que esta agencia siempre tendría jurisdicción cuando se alegaran daños a la propiedad como resultado de la instalación de un sistema de placas solares. Añadió que las cláusulas de arbitraje resultaban inaplicables

cuando existía una política pública en contrario, como la hay en nuestra jurisdicción.

El 12 de marzo de 2025, se celebró una vista administrativa ante el DACo, en la que las partes tuvieron oportunidad de discutir asuntos relativos a: una posible enmienda a la *Querella*; las peticiones de desestimación; la posibilidad de llegar a un acuerdo para poner fin a la controversia. Como resultado, la agencia emitió una *Orden* disponiendo sobre los términos para que las partes intercambiaran ofertas transaccionales, y la evidencia que pretendieran utilizar de celebrarse una vista administrativa en su fondo. Se dejó pautada vista en su fondo para el 28 de abril de 2025.

En efecto, la recurrente instó enmienda a *Querella*, precisando sus reclamaciones, con la inclusión de una discusión de derecho sobre las peticiones de desestimación de los querellados, y el presunto incumplimiento del contrato suscrito entre las partes. En lo que nos concierne, alegó que había suscrito un contrato para la instalación de placas solares y almacenamiento de energía en su residencia, en el cual **Windmar actuaría como contratista** para la instalación del sistema, mientras que Sunnova financiaría la compra del sistema mediante un contrato de venta al por menor a plazos. Afirmó que, entre las cláusulas del referido contrato fue incluida una garantía de veinticinco años en el que Sunnova, **a través de sus contratistas** o subcontratistas se obligaron a reparar el sistema, de ser necesario, y cubrir daños relacionados a su uso.[1] Una vez más, precisó los daños sufridos, y sostuvo que un perito electricista había certificado que la causa del incendio fue un corto circuito originado en la interconexión del sistema solar. Afirmó haber hecho las gestiones con los querellados para ser

---

[1] Apéndice 6 de la *Solicitud de desestimación por falta de jurisdicción* instada por Windmar ante nosotros.

indemnizado, sin resultado, pero Sunnova seguía cobrando por el servicio. (Énfasis provisto).

Ello provocó que Sunnova presentara otra moción de desestimación, reiterativa de lo que ya había explicitado en su primera moción a los mismos efectos, atinentes a la obligación acordada de arbitrar.

La recurrente se opuso a la solicitud de desestimación y peticionó la suspensión de la vista administrativa pautada para el 28 de abril de 2025.

Llegada la fecha de la vista administrativa, el DACo determinó reseñalarla para el 12 de junio de 2025.

Luego de lo cual, Windmar volvió a presentar una petición de desestimación, solicitando nuevamente que el caso fuera referido al proceso de arbitraje acordado por las partes.

Fue entonces cuando, el 10 de junio de 2025, Windmar instó ante el DACo una *Moción informativa sobre radicación de quiebras y solicitando paralización de los procedimientos*. Informó que, aunque la vista en su fondo estaba pautada para el 12 de junio de 2025, Sunnova había iniciado un proceso de quiebras en la Corte de Distrito de Estados Unidos para el Distrito de Texas el 8 de junio de 2025, lo que imponía la paralización del proceso. Junto a su moción incluyó documentación relativa al proceso de quiebras iniciado por Sunnova.

Al próximo día Sunnova también instó una *Moción informando procedimiento bajo la ley federal de quiebras*, dando cuentas al DACo sobre la información que ya había adelantado Windmar, acerca del inicio del proceso de quiebras. A tenor, solicitó que se ordenara la paralización de los procesos seguidos en su contra.

Es así como, el 20 de junio de 2025, el DACo emitió la *Resolución* cuya revocación nos solicita la recurrente. En su contenido, la Juez

Administrativo que atendió el asunto inició por resumir las alegaciones de la *Querella* presentada, para luego reconocer el proceso de quiebras iniciado por Sunnova, y mencionar la legislación federal que ordena la paralización de los procesos en tal caso. Entonces, en su parte dispositiva el DACo ordenó, en lo pertinente, *la paralización del procedimiento administrativo correspondiente a la querella de epígrafe por Sunnova Energy Corporation haber radicado petición de quiebra al amparo del Capítulo 11 de la Ley de Quiebras*. En este dictamen no se hizo alusión al co-querellado, Windmar.

Presentada por la recurrente una oportuna petición de reconsideración, que no fue atendida dentro del término reglamentario dispuesto para ello[2], decidió acudir ante nosotros mediante recurso de revisión judicial, alzando los siguientes señalamientos de error:

1. Erró el DACo al dictar una resolución administrativa incompleta que omite cualquier determinación respecto al co-querellado Windmar P.V. Energy, Inc. DBA Windmar Home, violando así los requisitos de una resolución final bajo la Ley de Procedimiento Administrativo Uniforme, resultando en una determinación carente de finalidad administrativa.

2. Erró el DACo al no establecer fundamento jurídico válido para paralizar procedimientos contra partes no afectadas por situaciones de quiebra, aplicando incorrectamente los efectos de la paralización automática a entidades jurídicamente independientes.

3. Erró el DACo al dictar una orden que limita indebidamente el acceso de la querellante a la justicia y viola el debido proceso de ley, contraviniendo la política pública que inspira la creación de la agencia.

En respuesta, Windmar presentó *Solicitud de desestimación por falta de jurisdicción.*

c.

El Artículo 4.002 de la Ley 201-2003, Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, según enmendada, (4 LPRA sec. 24 *et seq*.), (Ley de la Judicatura), dispone, en lo pertinente, que el Tribunal de Apelaciones revisará, como cuestión de derecho,

---

[2] Regla 3.15 de la LPAU, 3 LPRA sec. 9655.

las **decisiones finales** de los organismos y agencias administrativas, cuyo trámite se hará de conformidad con las disposiciones de la Ley 170-1998, según enmendada, conocida como la Ley de Procedimiento Administrativo Uniforme (LPAU). (Énfasis suplido.) En consonancia, la Regla 56 de nuestro Reglamento, Regla 56 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, dispone para que este foro intermedio revise las decisiones, los reglamentos, las órdenes, las resoluciones y las providencias **finales** dictadas por organismos o agencias administrativas. (Énfasis provisto.)

Por su parte, conforme manda la Sección 4.2 de la LPAU, 3 LPRA sec. 9672, **solamente las órdenes o resoluciones finales dictadas por las agencias o funcionarios administrativos pueden ser revisadas judicialmente**. (Énfasis suplido.) La referida Sección establece, en lo específico, lo siguiente:

> **[u]na parte adversamente afectada por una orden o resolución final de una agencia** y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la **orden o resolución final de la agencia** o a partir de la fecha aplicable de las dispuestas en la sec. 9655 de este título, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración.

Por su parte, nuestro Tribunal Supremo ha manifestado que la citada sección de la LPAU limitó nuestra facultad de revisión judicial a decisiones que cumplieran con dos requisitos: (a) que fueran órdenes o resoluciones finales de la agencia, y (b) que la parte adversamente afectada hubiese agotado todos los remedios provistos por la agencia administrativa. *J. Exam. Tec. Med. v. Elías et al*, 144 DPR 483 (1997). La LPAU no define específicamente el término *orden o resolución final*. No obstante, describe *orden o resolución como; cualquier decisión o acción*

*agencial de aplicación particular **que adjudique derechos u obligaciones de una o más personas específicas**, o que imponga penalidades o sanciones administrativas excluyendo órdenes ejecutivas emitidas por el Gobernador.* Sec. 1.3(g) de la LPAU, 3 LPRA sec. 9603(g). (Énfasis provisto). Por otra parte, describe "**orden o resolución <u>parcial</u>**" *como una acción* de la *agencia que adjudique algún derecho u obligación que **no ponga fin a la controversia total sino a un aspecto específico de la misma**.* Sec. 1.3(h) de la LPAU, 3 LPRA sec. 9603(h). *J. Exam. Tec. Med. v. Elías et al*, supra. (Énfasis provisto.)

Por otra parte, la Sección 3.14 de la LPAU, 3 LPRA sec. 9654, establece que una "orden o resolución final" *deberá incluir y exponer separadamente determinaciones de hechos, conclusiones de derecho, que fundamentan la adjudicación, la disponibilidad del recurso de reconsideración o revisión según sea el caso.* Sobre lo mismo, en *Crespo Claudio v. O.E.G.*, 173 DPR 804, 812-813 (2008), el Tribunal Supremo de Puerto Rico expresó:

> [a]hora bien, para que una orden o resolución **sea considerada final**, **se requiere que la misma ponga fin al caso ante la agencia y que tenga efectos sustanciales sobre las partes.** [...] Además, para que dicha decisión tenga carácter de finalidad debe incluir determinaciones de hecho, conclusiones de derecho y una advertencia sobre el derecho a solicitar reconsideración o revisión judicial. 3 L.P.R.A. sec. 2164. Igualmente, la misma debe estar firmada por el Jefe de la Agencia o por un funcionario autorizado [...] Id. (Énfasis provisto).

Sobre lo mismo, nuestro Tribunal Supremo había expresado en *J. Exam. Tec. Med. v. Elías et al*, supra, que para que una orden o resolución se considerara final tenía que **resolver todas las controversias y no podía dejar pendiente una para ser decidida en el futuro**. (Énfasis provisto.) Se manifestó en la misma Opinión, que del historial legislativo de la LPAU se desprendía que la Asamblea Legislativa decidió limitar la revisión judicial a las órdenes finales de las

agencias, superando el estado de derecho que le precedía el cual admitía la revisión judicial de órdenes interlocutorias. *Id.*

En definitiva, nuestro sistema de derecho administrativo sujetó la aplicación del recurso de revisión judicial a la existencia de una actuación de la agencia final que adjudicara todos los derechos y las obligaciones **de las partes**. *Id.* (Énfasis provisto.)

**Parte dispositiva**

Al discutir los señalamientos de error alzados, la recurrente inicia afirmando que el DACo *cometió un error fundamental de derecho al emitir una determinación administrativa incompleta, pues omitió cualquier pronunciamiento respecto al co-querellado Windmar*. De manera seguida, abundó que, tanto la Sección 3.14 de la LPAU, supra, como la jurisprudencia ordenan que una resolución administrativa final debe ser completa y definitiva para todas las partes.

Al comparecer ante nosotros, Windmar decidió guardar completo silencio sobre la discusión de los señalamientos de error levantados por la recurrente. Advirtiendo que no se estaba sometiendo a la jurisdicción de este foro intermedio, en su *Solicitud de desestimación por falta de jurisdicción* esta corporación se limitó a reiterar las razones por las cuales, a su juicio, el foro administrativo carecía de jurisdicción, relativas al acuerdo sobre arbitraje suscrito por las partes.

Iniciamos por significar que el DACo no ha hecho determinación alguna al momento sobre la defensa levantada por los co-querellados de la presunta primacía del proceso de arbitraje acordado por las partes, sobre la vía administrativa elegida por la recurrente. Al no haber una determinación final de la agencia sobre este asunto, cualquier expresión nuestra al respecto sería inoportuna.

Pero de igual forma resulta no revisable la *Resolución* recurrida, pues, como bien informa la recurrente, el DACo nada dispuso sobre una

de las partes querelladas, Windmar. Es de ver que, según las alegaciones contenidas en la *Querella*, Sunnova y Windmar son dos corporaciones distintas, y se enumeraron alegaciones particulares sobre la responsabilidad de estas respecto al incendio ocasionado, por lo que correspondía que DACo incluyera en la *Resolución* una determinación final con referencia a cada una de dichas corporaciones, no solo a Sunnova.

Sin necesidad de reiterar lo ya enfatizado en la exposición de derecho, este Tribunal de Apelaciones solo tiene jurisdicción para intervenir con las determinaciones finales de las agencias administrativas. La acepción *orden o resolución final* supone necesariamente la existencia de una actuación de la agencia que adjudique todos los derechos y las obligaciones **de las partes**, y solo cuando esto ocurre es que este foro intermedio queda habilitado para revisarla.

Como ya hemos repetido, la *Resolución* recurrida en este caso no dispuso nada sobre uno de los co-querellados, Windmar, de manera que no le podemos atribuir a dicho dictamen la finalidad que nos habilitaría para intervenir con lo decidido. La falta de información en la *Resolución* aludida nos imposibilita, por ejemplo, discernir si es que el DACo juzgó que, aunque solamente Sunnova fuera la que inició el proceso de quiebras, la paralización que a ello le sigue también le resultaba extensible a la causa de acción presentada contra la otra corporación co-querellada, Windmar, que no ha iniciado un proceso similar de quiebras[3].

---

[3] Advertimos que esta expresión nuestra **en manera alguna** deberá interpretarse como que estamos dilucidando o adelantando una opinión sobre si la orden de paralización por causa del inicio del proceso de quiebras por Sunnova era extensible o no a Windmar, el asunto permanece *quare,* al este foro intermedio no contar con un dictamen revisable sobre ello.

En consecuencia, reputamos la *Resolución* recurrida como parcial, no revisable[4]. De lo que se sigue que la presentación del recurso de revisión judicial resulta prematura, pues la recurrente precisa primero que el DACo cumpla con las exigencias de una *Resolución final*, para entonces poder acudir nuevamente ante nosotros, si así lo determinase.

**Parte Dispositiva**

Por los fundamentos que anteceden, hemos decidido desestimar el recurso de revisión judicial presentado, al ser prematuro. Una vez el DACo emita una determinación final, según tal concepto de derecho ha sido aquí discutido, entonces tendrá oportunidad la parte recurrente de decidir si acude ante nosotros nuevamente.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[4] No obstante, reconocemos que, respecto a Sunnova, procede la paralización de los procesos seguidos en su contra.